**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUSTIN SERNA, AARON RODRIGUEZ, REYHANEH MANSOORI, BRIAN MURPHY, GARY PALMER, JUSTIN BARNES, and AMELIA AMPONSEM, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

1-800-GOT-JUNK? LLC,

Defendant.

Case No. 5:24-cv-00047-HDV-MRW

**FIRST AMENDED CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs Justin Serna, Aaron Rodriguez, Reyhaneh Mansoori, Brian Murphy, Gary Palmer, Justin Barnes, and Amelia Amponsem ("Plaintiffs") bring this action against Defendant 1-800-GOT-JUNK? LLC ("Defendant" or "Got-Junk"), individually and on behalf of all others similarly situated. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Got-Junk for surreptitiously monitoring and recording the telephonic communications between consumers and its customer service representatives without first providing notice or obtaining the customer's consent.

2. Got-Junk is a waste management company that provides junk removal services to residential customers. Since its inception in 1989, Got-Junk has become one of the largest residential waste removal companies in California and throughout the United States.

3. As a junk removal company, Defendant provides support to customers over the phone and provides quotes and scheduling appointments for its junk removal services. Defendant monitors and records these interactions. What Defendant fails to do, however, is disclose this fact to customers who receive calls initiated by Defendant.

4. Because Defendant fails to disclose to consumers that it is recording telephonic communications at the outset of the call, Defendant violated and continues to violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 632 and 632.7.

5. Both Penal Code §§ 632 and 632.7 play important roles in protecting the privacy of California residents. Secret monitoring and recording denies the

customer an important aspect of privacy of communication – the right to control the nature and extent of the information they disclose.

6. Plaintiffs bring this action on behalf of themselves and a class of all persons in California whose telephonic communications were surreptitiously recorded by Defendant.

## PARTIES

7. Plaintiff Justin Serna is a California citizen and resident, residing in Fontana, California. Mr. Serna is a domiciliary of California. In early 2021, Mr. Serna contacted Defendant's customer service number with the intention of aiding an elderly neighbor in the removal of cardboard and metal debris from her property. Following an internal transfer and subsequent disconnection, Mr. Serna left a voicemail. Within one hour, he received a call from one of Defendant's customer service numbers. Although Mr. Serna did not hire Defendant for junk removal services, he continued to receive subsequent follow-up calls from Defendant's customer service numbers in approximately May 2021 and November 2021. In or about June of 2022, Mr. Serna received a call from one of Defendant's customer service numbers pertaining to a request Mr. Serna submitted a few days prior. During the call, Mr. Serna discussed personal and confidential matters with one of Defendant's agents. The phone calls took place while Mr. Serna was at home, physically present in California. During the calls Defendant placed to him, Mr. Serna was never told that the calls were being recorded, and he never consented to those recordings. Because Defendant did not disclose that its calls to Mr. Serna were being recorded, Mr. Serna reasonably expected that his communications with Defendant and its agents during the calls were not being recorded, and were therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Mr. Serna's calls and captured the contents of his communications with the live agents using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed discovery" rule. Plaintiff

Serna did not know that any of his calls were recorded until he conferred with and retained counsel on November 7, 2023, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Serna had no way of knowing that his calls were recorded because Defendant does not disclose its practice of recording its outbound calls.

8. Plaintiff Aaron Rodriguez is a California citizen and resident, residing in San Bernardino, California. Mr. Rodriguez is a domiciliary of California. During the summer of 2023, Mr. Rodriguez received a call from Defendant's customer service number. During the call, one of Defendant's agents inquired about Mr. Rodriguez's potential need for Defendant's services. Following a back-and-forth conversation, Mr. Rodriguez notified the agent that he was not in the position to obtain Defendant's services at that time. During the call, Mr. Rodriguez discussed personal and confidential matters with one of Defendant's agents. The phone call took place while Mr. Rodriguez was physically in California, inside of his personal vehicle. During the call Defendant placed to him, Mr. Rodriguez was never told that the call was being recorded, and he never consented to the recording. Because Defendant did not disclose that its call to Mr. Rodriguez was being recorded, Mr. Rodriguez reasonably expected that his communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Mr. Rodriguez's call and captured the contents of his communication with the live agent using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed discovery" rule. Plaintiff Rodriguez did not know that his call was recorded until he conferred with and retained counsel on March 22, 2024, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Rodriguez had no way of knowing that his call was recorded because Defendant does not disclose its practice of recording its outbound calls.

9. Plaintiff Reyhaneh Mansoori is a California citizen and resident, residing in Irvine, California. Ms. Mansoori is a domiciliary of California. In or about July of 2023, Ms. Mansoori received a call from Defendant's customer service number. During the call, one of Defendant's agents inquired about Ms. Mansoori's need for Defendant's services. Following a back-and-forth conversation, Ms. Mansoori notified the agent that she was not in the position to obtain Defendant's services at that time. During the call, Ms. Mansoori discussed personal and confidential matters with one of Defendant's agents. The phone call took place while Ms. Mansoori physically in California, inside of her personal vehicle. During the call Defendant placed to her, Ms. Mansoori was never told that the call was being recorded, and she never consented to the recording. Because Defendant did not disclose that its call to Ms. Mansoori was being recorded, Ms. Mansoori reasonably expected that her communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Ms. Mansoori's call and captured the contents of her communication with the live agent using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed discovery" rule. Plaintiff Mansoori did not know that her call was recorded until she conferred with and retained counsel on March 22, 2024, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Mansoori had no way of knowing that her call was recorded because Defendant does not disclose its practice of recording its outbound calls.

10. Plaintiff Brian Murphy is a California citizen and resident, residing in Arcadia, California. Mr. Murphy is a domiciliary of California. During the summer of 2023, Mr. Murphy received a call from Defendant's customer service number. During the call, one of Defendant's agents inquired about Mr. Murphy's need for Defendant's services. Following a back-and-forth conversation, Mr. Murphy notified

the agent that he was not in the position to obtain Defendant's services at that time. During the call, Mr. Murphy discussed personal and confidential matters with one of Defendant's agents. The phone call took place in the morning while Mr. Murphy was at his desk, in his home in California. During the call Defendant placed to him, Mr. Murphy was never told that the call was being recorded, and he never consented to the recording. Because Defendant did not disclose that its call to Mr. Murphy was being recorded, Mr. Murphy reasonably expected that his communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Mr. Murphy's call and captured the contents of his communication with the live agent using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed discovery" rule. Plaintiff Murphy did not know that his call was recorded until he conferred with and retained counsel on February 22, 2024, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Murphy had no way of knowing that his call was recorded because Defendant does not disclose its practice of recording its outbound calls.

11. Plaintiff Gary Palmer is a California citizen and resident, residing in Los Angeles, California. Mr. Palmer is a domiciliary of California. During the summer of 2023, Mr. Palmer received a call from Defendant's customer service number. During the call, one of Defendant's agents inquired about Mr. Palmer's need for Defendant's services. Following a back-and-forth conversation, Mr. Palmer notified the agent that he was not in the position to obtain Defendant's services at that time. During the call, Mr. Palmer discussed personal and confidential matters with one of Defendant's agents. The phone call took place while Mr. Palmer was at home, physically present in California. During the call Defendant placed to him, Mr. Palmer was never told that the call was being recorded, and he never consented to the recording. Because Defendant did not disclose that its call to Mr. Palmer was

being recorded, Mr. Palmer reasonably expected that his communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Mr. Palmer's call and captured the contents of his communication with the live agent using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed discovery" rule. Plaintiff Palmer did not know that his call was being recorded until he conferred with and retained counsel on February 23, 2024, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Palmer had no way of knowing that his call was recorded because Defendant does not disclose its practice of recording its outbound calls.

12. Plaintiff Justin Barnes is a California citizen and resident, residing in Inglewood, California. Mr. Barnes is a domiciliary of California. During the summer of 2022, Mr. Barnes received a call from Defendant's customer service number. During the call, one of Defendant's agents inquired about Mr. Barnes's need for Defendant's services. Following a back-and-forth conversation, Mr. Barnes notified the agent that he was not in the position to obtain Defendant's services at that time. During the call, Mr. Barnes discussed personal and confidential matters with one of Defendant's agents. The phone call took place while Mr. Barnes was physically in California, inside of his personal vehicle. During the call Defendant placed to him, Mr. Barnes was never told that the call was being recorded, and he never consented to the recording. Because Defendant did not disclose that its call to Mr. Barnes was being recorded, Mr. Barnes reasonably expected that his communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Mr. Barnes's call and captured the contents of his communication with the live agent using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed

discovery" rule. Plaintiff Barnes did not know that his call was recorded until he conferred with and retained counsel on March 22, 2024, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Barnes had no way of knowing that his call was recorded because Defendant does not disclose its practice of recording its outbound calls.

13. Plaintiff Amelia Amponsen is a California citizen and resident, residing in Los Angeles, California. Ms. Amponsen is a domiciliary of California. During the summer of 2023, Ms. Amponsen received a call from Defendant's customer service number. During the call, one of Defendant's agents inquired about Ms. Amponsen's need for Defendant's services. Following a back-and-forth conversation, Ms. Amponsen notified the agent that she was not in the position to obtain Defendant's services at that time. During the call, Ms. Amponsen discussed personal and confidential matters with one of Defendant's agents. The phone call took place while Ms. Amponsen was at home, physically present in California. During the call Defendant placed to her, Ms. Amponsen was never told that the call was being recorded, and she never consented to the recording. Because Defendant did not disclose that its call to Ms. Amponsen was being recorded, Ms. Amponsen reasonably expected that her communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c). On information and belief, Defendant was, in fact, recording Ms. Amponsen's call and captured the contents of her communication with the live agent using Invoca's software. Any applicable statute(s) of limitations has been tolled by the "delayed discovery" rule. Plaintiff Amponsen did not know that her call was recorded until she conferred with and retained counsel on March 25, 2024, who, in turn, confirmed Defendant's call recording practices based on their internal investigations. Prior to this date, Plaintiff Amponsen had no way of knowing that her call was recorded because Defendant does not disclose its practice of recording its outbound calls.

14. Defendant -800-GOT-JUNK? LLC ("Got Junk") is a Delaware limited liability corporation headquartered in Vancouver, Canada. Defendant's sole member is RBDS Rubbish Boys Disposal Service Inc., a Canadian corporation headquartered in Vancouver, Canada. Defendant Got Junk is a prominent junk removal company.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

16. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiffs' claims arise out of each of the Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

17. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

18. Got-Junk is a privately owned junk removal franchise that operates in the United States, Canada, and Australia. Got-Junk was founded in 1989 by Brian Scudamore: a high school drop-out student who saw an opportunity to pay for his college tuition by removing junk with a beatdown pickup truck which he initially called "The Rubbish Boys."[1] Today, Got-Junk is one of the leading junk removal

[1] CNBC, *Founder of 1-800-GOT-JUNK? dropped out of college to haul junk — now, he's eyeing a billion-dollar business* (Jan. 12, 2021), https://www.cnbc.com/2020/08/01/how-the-1-800-got-junk-founder-became-a-multimillionaire.html

companies in the United States with a yearly revenue of over $400 million.[2]

19. As with any moving company, Defendant must field customer inquiries and provide support for any issues that may arise in connection to its services. To that end, Defendant supplies a catchy and easy-to-remember customer service number for consumers to call: 1-800-GOT-JUNK (*i.e.*, 1-800-468-5865). Defendant also utilizes other customer service numbers in subsequent calls with its customers depending on a customer's location.

20. When Defendant calls customers using any of these numbers, the customer service agent does not disclose that the call is being recorded. As such, customers have a reasonable expectation of privacy regarding any information that they divulge on the call, including personally identifying information, including their name and telephone number, as well as the identity of the objects they seek to dispose, and the address where those items are located (all of which is highly sensitive in nature). Customers maintain this expectation of privacy because Defendant does not disclose that the call is being recorded and Defendant never obtains customer consent to do so.

21. Contrary to Plaintiffs' and class members' belief, however, the conversations between customers and Defendant's agents are being surreptitiously recorded, including through the use of software provided by Invoca, Inc. ("Invoca").

22. Defendant records and monitors customer calls through a software platform developed by Invoca, and potentially other platforms as well.

23. Invoca's software comprises a suite of tools that are focused on optimizing marketing campaigns and audience management by allowing companies to monitor and analyze customer-agent phone interactions. Invoca's software uses

---

[2] Franchise Chatter, *FDD Talk: 1-800-Got-Junk? Franchise Costs, Fees, Average Revenues and/or Profits (2022 Review)* (Nov, 27, 2022), https://www.franchisechatter.com/2022/11/27/fdd-talk-1-800-got-junk-franchise-costs-fees-average-revenues-and-or-profits-2022-review/

artificial intelligence technology to record and transcribe customers' phone calls, which it then analyzes to gain insight about the customer's purchasing journey. For example, Invoca enables companies to identify whether customer calls are being placed from numbers on their webpages or marketing campaigns. Invoca also provide analytics about these phone calls, including general issues derived from ubiquitous key words that it scans from call transcriptions. Invoca records the contents of these calls as they occur in real time.[3]

24. Defendant deliberately implemented the call recording and monitoring features of Invoca's software in an effort to improve its marketing campaigns.

25. In an advertising brochure about Got-Junk's incorporation of the Invoca software into its customer service protocol, Invoca writes:

> "When a potential customer uses one of the call center numbers on the 1-800-GOT-JUNK? website, an agent responds and manually records the call outcome in the company's customer relationship management (CRM) platform. And, before Invoca, that's where the information would have stayed. However, by using Google Click ID, Invoca was able to automatically stream that information, including specific details about the call outcome, back to Google Ads."[4]

26. Defendant deliberately monitors and records customer phone calls and shares them with third parties for marketing purposes, yet Defendant fails to provide notice to customers that this is occurring, nor does Defendant obtain customer consent to be recorded.

27. Defendant's policy of monitoring and recording calls without informing

---

[3] "Unlike other systems that only begin recording once the agent answers, Invoca begins recording as soon as the call connects — and stays on the call no matter where it's transferred to — enabling you to capture the complete caller experience, every time." https://www.invoca.com/product/call-recordings-and-transcriptions

[4] https://assets-global.website-files.com/5dfbb65fcb94d5455876bad9/5f470ec01a4808358ec39317_Invoca-Case_Study-1-800-GOT-JUNK.pdf

customers is a uniform practice and occurs anytime a customer has a phone call with Defendant.

## CLASS ALLEGATIONS

28. ***Class Definitions.*** Plaintiffs bring this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Section 632 Class"):

> All individuals who, while physically present in California, participated in an inbound telephone call with Got-Junk or one of its agents.

29. Plaintiffs also seek to represent a class, defined as follows (the "Section 632.7 Class"):

> All individuals who, while physically present in California and using a cellular telephone, participated in an inbound telephone call with Got-Junk or one of its agents.

30. Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

31. ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

32. ***Commonality.*** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a) Whether Defendant has a policy and practice of recording and/or monitoring telephone conversations with customers;

(b) Whether Defendant notifies customers that it is recording them;

(c) Whether Defendant obtains a customer's consent to be recorded at the outset of the telephone call;

(d) Whether Defendant instructed its agents to record and monitor calls without disclosing to customers that they were doing so;

(e) Whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632 and invaded Plaintiffs' and the Class's privacy rights in violation of the California Constitution;

(f) Whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632.7;

(g) Whether Plaintiffs and the Classes are entitled to injunctive relief under Cal. Penal Code § 637.2(b) to enjoin or restrain Got-Junk from committing further violations of Cal. Penal Code §§ 632 and 632.7.

(h) Whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

33. ***Typicality.*** The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs, like all other class members, were called by Got-Junk and had their communications recorded without their consent.

34. ***Adequacy.*** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

35. ***Superiority.*** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

36. Plaintiffs bring all claims in this action individually and on behalf of members of the Classes against Defendant.

**COUNT I**
**Violation of Cal. Penal Code § 632**

37. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

38. Plaintiffs bring this Count individually and on behalf of the members of the putative Section 632 Class.

39. California Penal code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses [a] … recording device to … record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation.

40. A defendant violates Section 632 unless it can show it had the consent of all parties to a communication prior to the moment the recording was made.

41. Defendant, using computer software, intentionally monitored and recorded the telephonic communications between itself and its agents on the one hand and Plaintiffs and other members of the Classes on the other.

42. At no time did Defendant or any of its agents inform Plaintiffs or the members of the Classes that the recording of their telephonic communications was taking place and at no time did Plaintiffs or the members of the Classes consent to this activity.

43. These communications were "confidential communications," as that term is used in Section 632, because Plaintiffs and class members had objectively reasonable expectations of privacy with respect to any personal or financial information they disclosed during the course of those communications.

44. Defendant has therefore violated Cal. Penal Code § 632(a) by intentionally recording Plaintiffs and the members of the Classes' telephonic communications without first notifying them or obtaining their consent.

45. Accordingly, Plaintiffs and the members of the Classes have been injured by Defendant's conduct and, pursuant to Cal. Penal Code § 632, each seek damages of $5,000 per violation.

**COUNT II**
**Violation of Cal. Penal Code § 632.7**

46. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

47. Plaintiffs bring this Count individually and on behalf of the members of the putative Section 632.7 Class.

48. California Penal Code § 632.7(a) prohibits the same conduct as described in Section 632, but extends this prohibition to communications involving a cellular telephone.

49. Though similar, Cal. Penal Code § 632 and § 632.7 are not duplicative and protect separate rights.

50. Cal. Penal Code § 632.7 grants a wider range of protection to conversations where one participant uses a cellular phone or cordless phone because it does not have the "confidential communication" requirement of Cal. Penal Code § 632.

51. A defendant violates Section 632.7(a) unless it can show it had the consent of all parties to a communication prior to the moment the recording was made.

52. Defendant, using computer software, intentionally monitored and recorded the telephonic communications between Plaintiffs, and the members of the Section 632.7 Class, and its agents.

53. At no time did Defendant or any of its agents inform Plaintiffs or the members of the Section 632.7 Class that the recording of their telephonic communications was taking place and at no time did Plaintiffs or the members of the Section 632.7 Class consent to this activity.

54. Defendant has therefore violated Cal. Penal Code § 632.7(a) by intentionally recording Plaintiffs or the members of the Section 632.7 Class's telephonic communications without first notifying them or obtaining their consent.

55. Accordingly, Plaintiffs and the members of the Section 632.7 Class have been injured by Defendant's conduct and, pursuant to Cal. Penal Code § 637.2, each seek damages of $5,000 per violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the putative Classes and naming Plaintiffs as the representatives of the classes, and Plaintiffs' attorneys as Class Counsel to represent the putative Classes;

b. For an order declaring that the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the putative Classes on all counts asserted herein;

d. For statutory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For injunctive relief as pleaded or as the Court may deem proper; and

g. For an order awarding Plaintiffs and the putative Classes their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: March 25, 2024

**BURSOR & FISHER, P.A.**

By: /s/ *L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*