**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUSTIN SERNA, AARON RODRIGUEZ, REYHANEH MANSOORI, BRIAN MURPHY, GARY PALMER, JUSTIN BARNES, and AMELIA AMPONSEM individually and on behalf of all others similarly situated,

Plaintiffs,

v.

1-800-GOT-JUNK? LLC,

Defendant.

Case No.: 5:24-cv-00047-HDV-MRW

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Date: July 11, 2024
Time: 10:00 a.m.
Judge: Hon. Hernán D. Vera
Ctrm: Courtroom 5B

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. DEFENDANT'S FACTUAL ATTACK GOES TO THE MERITS OF PLAINTIFFS' CLAIMS AND OTHERWISE FAILS ........ 3

II. PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Acevedo v. C & S Plaza Ltd. Liab. Co.*, 2021 WL 4938124 (9th Cir. Oct. 22, 2021) .......... 5

*Doe v. Microsoft Corp.*, 2023 WL 8780879 n.6 (W.D. Wash. Dec. 19, 2023) .......... 11

*F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) .......... 9

*Flowers v. Twilio, Inc.*, No. RG16-804363, LEXIS 8192 (Cal. Super. Ct. Jan. 2, 2018) .......... 2

*Flowers v. Twilio, Inc.*, No. RG16-804363, LEXIS 36508 (Cal. Super. Ct. Aug. 2, 2016) .......... 2

*Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) .......... 10

*Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591 (2020) .......... 3

*Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012 (S.D. Cal. 2016) .......... 10

*Portillo v. J.D. Mellberg Fin. of Texas, L.L.C.*, 2017 WL 11634948 (C.D. Cal. Aug. 31, 2017) .......... 9

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) .......... 2

*Romani v. Shearson Lehman Hutton*, 929 F.2d 875 (1st Cir. 1991) .......... 10

*Romero v. Securus Techs.*, 216 F. Supp. 3d 1078 (S.D. Cal. 2016) .......... 5, 6

*Romero v. Securus Techs.*, 331 F.R.D. 391 (S.D. Cal. 2018) .......... 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 4

*Sapan v. Shore Capital Corp.*,
2024 U.S. Dist. LEXIS 98458 (C.D. Cal. May 31, 2024) .......... 9

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 3

*Vera v. Bureau of Indian Affs.*,
738 F. App'x 431 (9th Cir. 2018) .......... 5, 11

*Vonbergen v. Liberty Mut. Ins. Co.*,
2023 WL 8569004 (E.D. Pa. Dec. 11, 2023) .......... 3

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .......... 7

*Wright v. Walmart Stores, Inc.*,
2024 WL 1191067 (C.D. Cal. Mar. 11, 2024) .......... 7

**STATUTES**

Cal. Penal Code § 631 .......... 3

Cal. Penal Code § 632 .......... 2

Cal. Penal Code § 632.7 .......... 2, 3

Plaintiffs Justin Serna, Aaron Rodriguez, Reyhaneh Mansoori, Brian Murphy, Gary Palmer, Justin Barnes, and Amelia Amponsem ("Plaintiffs") respectfully submit this Opposition to Defendant 1-800-GOT-JUNK? LLC., ("Defendant") Motion to Dismiss. (ECF No. 22) (the "Motion" or "MTD").

## INTRODUCTION

This case arises from Defendant's unlawful monitoring and recording of telephonic communications of its client base by employing Invoca, Inc. ("Invoca") and other "third-parties for marketing purposes" without notifying Plaintiffs about the presence of these third parties or even obtaining Plaintiffs' consent to monitor or record their calls with Defendant. *See* Complaint ("Compl.") ¶¶ 23-24. Defendant's use of Invoca and these other third-party providers far exceeds the typical equipment that companies use for quality and training purposes. Indeed, Plaintiffs cite a case study indicating that, before contracting with Invoca, Defendant's agents would "manually record[] the call outcome in the company's customer relationship management (CRM) platform…where the information would have stayed." *Id.* ¶ 25. However, after using Invoca, Defendant is now "able to automatically stream that information, including specific details about the call outcome, back to Google Ads." *Id.* To accomplish this task, Invoca uses "artificial intelligence technology to record and transcribe customers' phone calls" in order to "identify whether customer calls are being placed from numbers on their webpages or marketing campaigns" and "provide analytics about these phone calls, including general issues derived from ubiquitous key words that it scans from call transcriptions." *Id.* ¶ 23.

In other words, unlike ordinary tape recorders "that only begin recording once the agent answers," Invoca wiretaps and redirects phone calls to its own servers, allowing it to "begin[] recording as soon as the call connects — and stay[] on the call no matter where it's transferred to." *Id.* fn. 3. "Contrary to [Defendant's] characterization of the complaint, [Plaintiffs] makes clear that it is [Invoca], not

[Defendant], that recorded the communications, and thus [Invoca] had possession and control of the contents of the communications, which it disclosed to [Defendant] on request." *Flowers v. Twilio, Inc.*, No. RG16804363, LEXIS 36508, at *2 (Cal. Super. Ct. Aug. 2, 2016).

Plaintiffs further allege Defendant never informed them that their calls were being monitored by third parties, like Invoca, nor did they consent to their "confidential" communications being recorded. *Id.* ¶¶ 7-13, 26, 42, 53. Thus, Plaintiffs have sufficiently alleged that Defendant's use of Invoca and other third parties to surreptitiously record their communications without their consent violates Cal. Penal Code ("CIPA") §§ 632 and 632.7. *See Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) ("Even in jurisdictions with eavesdropping statutes that are narrower than that of California, several courts have at least implied that listening on extension telephones without the consent of all participants is prohibited."); *see also Flowers v. Twilio, Inc.*, No. RG16-804363, LEXIS 8192, at *12 (Cal. Super. Ct. Jan. 2, 2018) ("Plaintiff has established—and Twilio has not rebutted—that Twilio and its customers did not disclose to end users that calls and texts would be intercepted and recorded by a third party" in violation of CIPA §§ 631 and 632.7"); *see also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 609 (2020) ("Our interpretation of CIPA does not preclude a corporation such as Yelp from engaging in one-way recordings for the indicated purpose of sales training or quality control. Our holding does, however, make such recording illegal under CIPA if consent is not first obtained from all the participants of the call."); *see also Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *3 (C.D. Cal. Mar. 28, 2024) ("Moreover, Valenzuela's implied consent to Kroger having a copy of the conversation is not the same as her consent to allow a third party to eavesdrop on the conversation and to collect her data to harvest and sell to others."); *accord Vonbergen v. Liberty Mut. Ins. Co.*, 2023 WL 8569004, at *12 (E.D. Pa. Dec. 11, 2023) ("Though Liberty Mutual may

have consented to the alleged third-party interception of Ms. Vonbergen's information, the Pennsylvania Wiretap Act requires all parties—not just *a* party—to consent to that interception. Ms. Vonbergen has sufficiently pled that she did not consent to third-party session replay software providers' interception of her communications.") (cleaned up).

Throughout its multiple motions to dismiss, Defendant refuses to accept Plaintiffs' well-plead allegations. In its first motion to dismiss, Defendant attacked Plaintiff's Serna's allegations based on a treacherous interpretation of the case study outlining Defendant's use of Invoca to monitor and record calls. ECF No. 16, at 5-6. In that motion, Defendant also attempted, through a series of unwarranted inferences, to write into the complaint that it could be "interpreted" that Mr. Serna was notified that his calls were recorded. *Id.* at 7-8. Now, Defendant has taken an extraordinary measure by attempting to ***adjudicate*** the key factual questions at the heart of Plaintiffs' claims through a dubious three-page declaration devoid of any details or evidence. MTD, Ex. A ("Decl. of T. Peerless"). For these reasons, and as further described herein, the Court should deny Defendant's Motion in full.

## ARGUMENT

### I. DEFENDANT'S FACTUAL ATTACK GOES TO THE MERITS OF PLAINTIFFS' CLAIMS AND OTHERWISE FAILS

Defendant argues that, in deciding its factual attack on Plaintiffs' standing, "the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment' and 'need not presume the truthfulness of the plaintiff's allegations.'" MTD at 3 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendant, however, misstates the law by omitting a key phrase from *Safe Air for Everyone*—namely, that a court may not decide genuinely disputed facts where "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Safe Air*, 373 F.3d at 1039 (internal quotations and citations omitted). In such a situation, "the court assumes the

truth of the allegations in a complaint unless controverted by undisputed facts in the record. The court may grant the motion to dismiss only if, viewing the evidence in the light most favorable to the non-movant, the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Otherwise, the intertwined jurisdictional facts must be resolved at trial or by summary judgment." *Acevedo v. C & S Plaza Ltd. Liab. Co.*, 2021 WL 4938124, at *3 (9th Cir. Oct. 22, 2021) (internal citations omitted). Here, there is no question that Defendant's jurisdictional attacks on Plaintiffs' standing are inextricably intertwined with their CIPA claims: Defendant contends that it either did not record the Plaintiffs' calls or, if it did, it gave the requisite notice to establish consent. MTD at 4-5. More succinctly, Defendant is telling the Court that it lacks jurisdiction to adjudicate Plaintiffs' claims because: "I didn't do it." As such, because Defendant's "12(b)(1) motion require[s] [Plaintiffs] to defend a core element of [their] substantive tort case at its outset…this entitles [Plaintiffs] to the protections of a summary judgment motion rather than the more limited protections given to a plaintiff responding to a factual attack on jurisdiction." *Vera v. Bureau of Indian Affs.*, 738 F. App'x 431, 432 (9th Cir. 2018) (internal citations omitted) (emphasis added). Defendant's four-page declaration falls short of the mark in showing that there are no genuine disputes of fact to entitle it to judgment as a matter of law on the pleadings alone.

*Romero v. Securus Techs., Inc.*, is on point here. 216 F. Supp. 3d 1078 (S.D. Cal. 2016). In *Romero*, two former inmates and a criminal defense attorney sued the defendant, a correctional facility telephone provider, for allegedly recording their phone calls without their consent in violation of CIPA § 636. *Id.* at 1084. There, like here, the defendant sought to dismiss the plaintiffs' claims through a 12(b)(1) motion by submitting a declaration that purportedly showed that it did not monitor or record any of the calls outlined in the complaint. *Id.* at 1086-87. Recognizing that the

defendant's motion was intertwined with "salient questions" behind the plaintiffs' CIPA claims, the court refrained from delving too deeply into the merits of the declaration, explaining that if "the court were to decide this question now, it would for all intents and purposes be granting summary judgment in favor of Defendant." *Id.* In so doing, the court also noted that while the defendant's declaration allegedly showed that the at-issue call did not take place, it did "not say that Defendant ***never recorded any calls*** to or from those attorney telephone numbers." *Id.* (emphasis added). Significantly, after proceeding through discovery, the *Romero* plaintiffs established that the disputed call recordings took place via summary judgment by producing undisputed circumstantial evidence corroborating the same, including email correspondence between the sheriff's department and the defendant concerning those calls. *Romero v. Securus Techs.*, 331 F.R.D. 391, 400-01 (S.D. Cal. 2018).

Here, the court's reasoning in *Romero* applies with even greater force given that Defendant's declaration contains even less information to identify Plaintiffs' identities or the at-issue call recordings. Specifically, Defendant's search query was conducted within limited parameters, making it impossible to establish that the at-issue calls ***never*** took place took place. For instance, Defendant limited its search queries to the narrow time frame of <u>**three months**</u> (*i.e.*, June through August) based on the Complaint's use of the word "summer" to describe the approximate periods when certain Plaintiffs believe the calls took place.[1] This search is problematic given that Defendant has full dominion and control over the recordings. For example, Defendant might have follow-up call recordings from Plaintiffs in September (instead of August) but chose to not search, or disclose, any calls that might have occurred on that (or any other) month. Thus, as in *Romero*, Defendant's declaration does "not say that Defendant ***never recorded any calls*** to or from [Plaintiffs] telephone numbers." *Romero*, 216 F. Supp. 3d at 1086–87 (emphasis added).

[1] Decl. of T. Peerless ¶¶ 6-12.

Because Defendant's limited search queries cannot conclusively show "that there is an absence of evidence to support" Plaintiffs' claims, Defendant's Motion, which is subject to the same standard as a motion for summary judgment, should be denied. *Wright v. Walmart Stores, Inc.*, 2024 WL 1191067, at *4-5 (C.D. Cal. Mar. 11, 2024) (Vera, J.) (citation omitted); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1197-98 (N.D. Cal. 2019) (denying Facebook's 12(b)(1) factual attack on the plaintiffs' privacy claims based on a declaration from an executive because "evidence of who, if any, third parties Facebook may have disclosed Plaintiffs' call and text logs…are wholly within Facebook's control," such that "[t]o expect Plaintiffs to produce evidence to counter Facebook's factual attack on these grounds is inappropriate at this stage of litigation.").

Defendant's declaration is replete with other infirmities, each one providing separate grounds for denying its Motion.

***First***, Defendant's search of its "systems" was conducted based on the Plaintiffs' names,[2] rather than more reliable information—such as their phone numbers.[3] Indeed, people: (1) often go by different names and aliases rather than their legal names; and (2) do not provide their specific residential address when making a general inquiry about moving services. Based on this unreliable data input, Defendant admits in its Motion that it was "unable to confirm whether this call is in fact associated with Plaintiff Murphy rather than a different individual with the same name." MTD at fn. 4. This equivocation, by itself, warrants denial of Defendant's Motion.

***Second***, Defendant only searched calls for consumers "residing in California."[4] How could Defendant conclusively determine that Plaintiffs' calls

[2] *Id.* ¶ 4.

[3] Defendant claims to have searched for Mr. Serna using his phone number. *Id.* ¶ 6. Yet, Defendant's declaration does not explain why Mr. Serna was not searched using his name as well.

[4] *Id.* ¶ 4.

were captured within this limited parameter without possessing Plaintiffs' phone numbers (and respective area codes) or their home addresses (which might not have been exchanged over the phone)? Without any further elaboration, this again serves as a basis to deny Defendant's Motion.

***Third***, Defendant limited its search queries to its 1-800-GOT-JUNK? telephone number (1-800-468-5865),[5] while the Complaint alleges "Defendant also utilizes other customer service numbers in subsequent calls with its customers depending on a customer's location." Compl. ¶ 19. Although not necessary, Plaintiffs have adduced evidence that Defendant uses additional numbers to communicate with customers through its Invoca software. *See* Declaration of L. Timothy Fisher ("Fisher Decl.") ¶ 3 Exhibit A.

***Fourth***, Defendant's declaration does not show that it ran a search query to see if Invoca's platform and servers, *as opposed to its own*,[6] contains Plaintiffs' call recordings. *See* Compl. ¶ 25 ("[Defendant's] agent responds and manually records the call outcome in the company's customer relationship management (CRM) platform. **And, before Invoca, that's where the information would have stayed.**").[7] *See* Fisher Decl. ¶ 4 Exhibit B (showing how Invoca hosts its information on its platform and what a search from Defendant would have looked like).

***Fifth***, Defendant's declaration tacitly admits that it records outgoing calls, as Plaintiffs allege. Specifically, Paragraph 9 of the declaration states, "[o]ur search did not locate any other calls during the Summer of 2023 **to or from** an individual named 'Brian Murphy' residing in California." ECF No. 22-1, ¶ 9 (emphasis added).

---

[5] *Id.* ¶ 3.

[6] *Id.* ¶¶ 2-5.

[7] A review of how Invoca's call recording system operates can be found at: https://community.invoca.com/t5/invoca-reporting-suite/how-to-search-for-a-word-or-phrase-from-all-your-invoca-phone/ta-p/729

At minimum, this lends further plausibility to Plaintiffs' allegations that Defendant records outgoing calls to consumers without consent.

As set forth above, Defendant's declaration is full of gaps that warrant further factual discovery. In fact, Defendant's conclusory declaration fails to incorporate any exhibits or details on how the search was conducted—including the source, quality, and scope of its database or Defendant's retention and/or deletion policy of its call recordings. At bottom, Defendant's declaration simply uses its own words, without more, to contradict Plaintiffs' well-plead allegations. "To otherwise allow a challenge to subject matter jurisdiction under these circumstances would improperly allow a defendant to defeat jurisdiction by declaration by simply declaring that [it] was not involved in the alleged violations." *Sapan v. Shore Capital Corp.*, 2024 U.S. Dist. LEXIS 98458, at *13-14 (C.D. Cal. May 31, 2024) (cleaned up) (denying a 12(b)(1) factual attack on a plaintiff's TCPA standing based on defendant's declarations allegedly contradicting plaintiff's allegations that defendant, through its agents, called plaintiff). *See also F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Here, Plaintiff has alleged the approximate time window that Defendant called them, as well as a general description of their conversations, to the best of their recollection. Defendant's contention that Plaintiffs should allege more information about their private and confidential communications on the pleadings is counterintuitive, unreasonable, and contrary to the weight of this Circuit. *See Portillo v. J.D. Mellberg Fin. of Texas, L.L.C.*, 2017 WL 11634948, at *2 (C.D. Cal. Aug. 31, 2017) ("Defendant asserts that the FAC is composed of generic conclusory statements which neither put Defendant on notice of its alleged misconduct nor plausibly state a claim for relief. However, all that Plaintiff must allege to state a

Section 632.7 claim is that Defendant received her communications via calls made on her wireless phone, that Defendant recorded the calls, and that Defendant did so without obtaining her consent.'") (internal quotation marks and citation omitted); *see also Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1016 (S.D. Cal. 2016) ("To order Mendez to provide her complete cellular phone number, as well as specific dates and times for the calls and messages received, would elevate the pleading standard to that which applies to non-fraud claims. It would also run contrary to many decisions from this district that hold contrarily.") (cleaned up) (citing cases); *accord Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir. 1991) (where allegations of fraud are based on information and belief because the facts are within the possession and control of Defendant, the complaint need only set forth the source of the information and the reasons for the belief.).

## II. PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED

In a footnote, Defendant argues in a conclusory manner that "Plaintiffs' claims are barred by the one-year statute of limitations." MTD at fn. 3. Aside from the fact that Defendant's contention is impermissibly vague, Plaintiffs have sufficiently alleged that they had "no way of knowing that [their] call was recorded because Defendant does not disclose its practice of recording its outbound calls." Compl. ¶¶ 9-13. Plaintiff's allegations are also supported by common sense and ample case law. *See e.g., Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *6 (N.D. Cal. Nov. 13, 2018) ("On calls where plaintiff received a recording disclosure, it is a reasonable inference that plaintiff was not aware that the recording had started before he heard the disclosure and gave consent. Nor is the Court persuaded that plaintiff had any reason to suspect wrongdoing simply by the fact that on some of the phone calls plaintiff received a recording disclosure partway through. The very nature of plaintiff's allegations is that the recordings were done surreptitiously. Even if plaintiff became aware during the course of certain calls that those calls were being

recorded, it does not follow that plaintiff should have known or inquired as to whether the calls were being illegally recorded before he gave his consent."); *see also Doe v. Microsoft Corp.*, 2023 WL 8780879, at *5 n.6 (W.D. Wash. Dec. 19, 2023) ("According to the complaint, '[t]he earliest Plaintiff and Class Members could have known about Defendants' conduct was shortly before the filing of this Complaint.' Accepting Plaintiff's allegations as true, the delayed discovery rule tolls the statute of limitations, making the specific timing of alleged misconduct irrelevant to the analysis.").

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's Motion. Alternatively, Plaintiffs respectfully request discovery, as necessary, to oppose Defendant's controverted allegations. *See Vera*, 738 F. App'x at 432 (reversing Rule 12(b)(1) dismissal for not permitting plaintiff to pursue discovery as to jurisdictional facts that were not within his knowledge or control, in this case the extent of government control over a portion of a road where plaintiff's accident occurred).

Dated: June 20, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3,037 words, which complies with the word limit of L.R. 11-6.2.

*/s/ L. Timothy Fisher*
L. Timothy Fisher