**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JUSTIN SERNA, AARON RODRIGUEZ, REYHANEH MANSOORI, BRIAN MURPHY, GARY PALMER, JUSTIN BARNES, and AMELIA AMPONSEM, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

1-800-GOT-JUNK? LLC,

Defendant.

Case No. 5:24-cv-00047-HDV-MRW

Hon. Hernán D. Vera

**PLAINTIFFS' OPPOSITION TO 1-800-GOT-JUNK? LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: November 21, 2024
Time: 10:00 A.M.
Complaint Filed: 1/9/2024

# TABLE OF CONTENTS

**PAGE(S)**


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. GOVERNING LAW ..... 5

IV. ARGUMENT ..... 6

A. The FAC Adequately Alleges That Defendant Intended to Record the Calls at Issue Under Both Under §§ 632 And 632.7 ..... 6

B. Plaintiffs Adequately State a Claim Under § 632 ..... 11

1. § 632 Is Not Limited to Landlines ..... 11

2. The FAC Plausibly Alleges That Plaintiffs' Communications with Defendant Were Confidential ..... 13

V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Brinkley v. Monterey Fin. Servs., LLC*,
340 F. Supp. 3d 1036 (S.D. Cal. 2018) .......... 3, 13, 14, 15

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... 11, 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 12

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) .......... 17

*Fazaga v. Fed. Bureau of Investigation*,
965 F.3d 1015 (9th Cir. 2020) .......... 16

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 14, 15

*Frio v. Superior Ct.*,
203 Cal. App. 3d 1480 (Ct. App. 1988) .......... 15

*Hartman v. Bandini Petroleum Co.*,
107 Cal. App. 659 (Cal. Ct. App. 1930) .......... 10

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
223 Cal. App. 4th 1454 (2014) .......... 16

*Hudson v. Superior Ct.*,
7 Cal. App. 5th 1165 (2017) .......... 10

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 2, 9

*Kahn v. Outrigger Enterprises, Inc.*,
2013 WL 12136379 (C.D. Cal. Oct. 29, 2013) .......... 3, 13, 14

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) .......... 15

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) .......... 15

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) .......... 13

*Nader v. Cap. One Bank (USA), N.A.*,
2013 WL 11070244 (C.D. Cal. June 11, 2013) .......... 3, 14

*People v. Hopkins*,
149 Cal. App. 3d 36 (Ct. App. 1983) .......... 10

*People v. Superior Ct. of Los Angeles Cnty.*,
70 Cal. 2d 123 (1969) .......... 9

*Perea v. Humana Pharmacy, Inc.*,
2013 WL 12129618 (C.D. Cal. Jan. 23, 2013) .......... 3, 13, 14

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) .......... 2, 8, 9, 13

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .......... 10, 16

**STATUTES**

Cal. Penal Code § 632 .......... passim

# I. INTRODUCTION

Plaintiffs Justin Serna, Aaron Rodriguez, Reyhaneh Mansoori, Brian Murphy, Gary Palmer, Justin Barnes, and Amelia Amponsem (collectively "Plaintiffs") hereby oppose Defendant 1-800-Got-Junk? LLC's ("Defendant") Motion for Judgment on the Pleadings (ECF No. 45) ("MJP"). Plaintiffs plausibly state a claim under Cal. Penal Code § 632 ("§ 632") and Cal. Penal Code § 632.7 ("§ 632.7") because Defendant surreptitiously monitored and recorded Plaintiffs' and class members' telephone communications due to Defendant's use of third-party software provided by Invoca, Inc. ("Invoca"). The Invoca software begins recording the call as soon as the call connects, and the recording continues even if the call is transferred. Defendant uses the Invoca software to improve marketing campaigns, but unlawfully records calls that capture personal information of Plaintiffs and class members, including names, telephone numbers, the identity of the objects they seek to dispose, and the address where those items are located. Defendant did not disclose to Plaintiffs and class members that it recorded outgoing customer calls. When Plaintiffs took the phone calls with Defendant, they each did so under circumstances evidencing a reasonable expectation of privacy, namely, by taking the calls either from the privacy of their homes or personal vehicles. By intentionally recording telephone calls with Plaintiffs and class members, which Defendant knew would involve the divulging of confidential information, Defendant violated both § 632 and § 632.7.

Defendant now seeks judgment on the pleadings for three reasons, each without merit. *First*, Defendant argues that "Plaintiffs do not establish that 1-800-GOT-JUNK acted with the requisite intent required under both §§ 632 and 632.7." *See* Defendant's Notice of Motion and Motion for Judgment on the Pleadings (ECF No. 45) ("MJP"), at 1. But Defendant's argument is belied by case law, which makes clear that where a defendant records every phone call knowing that the calls would include confidential information, and makes no attempt to avoid recording said confidential information, the defendant violates both § 632 and § 632.7. *Rojas v. HSBC Card Servs. Inc.*, 20

Cal. App. 5th 427 (2018); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827–28 (N.D. Cal. 2020).

*Second*, Defendant argues "Plaintiffs' § 632 claim fails [because] Plaintiffs do not allege that the calls were received on a landline . . ." MJP at 1. However, numerous courts have held that claims under § 632 are not limited to calls involving landlines. *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1042 (S.D. Cal. 2018); *Perea v. Humana Pharmacy, Inc.*, 2013 WL 12129618, at *5 (C.D. Cal. Jan. 23, 2013); *Kahn v. Outrigger Enterprises, Inc.*, 2013 WL 12136379, at *5 (C.D. Cal. Oct. 29, 2013); *Nader v. Cap. One Bank (USA), N.A.*, 2013 WL 11070244, at *2 n.4 (C.D. Cal. June 11, 2013). The cases finding that § 632 is not limited to landlines provide a far more compelling statutory analysis than the cases cited by Defendant.

*Third*, Defendant argues that Plaintiffs "cannot demonstrate that the alleged calls inquiring about junk removal were in fact confidential communications (or that 1-800-GOT-JUNK intended to record communications that were confidential), in order to state a claim under § 632." MJP at 1. Plaintiffs have alleged numerous facts plausibly establishing that their calls with Defendant contained confidential communications, notably that said customer service calls resulted in Plaintiffs and class members divulging personally identifiable information to Defendant.

Accordingly, Plaintiffs respectfully request that this Court deny Defendant's motion for judgment on the pleadings in its entirety.

## II. STATEMENT OF FACTS

The operative complaint is Plaintiffs' First Amended Complaint (ECF No. 17) ("FAC"). Plaintiffs allege that Defendant "surreptitiously monitor[s] and record[s] the telephonic communications between consumers and its customer service representatives without first providing notice or obtaining the customer's consent." FAC ¶ 1. Defendant, a junk removal company, "provides support to customers over the phone and provides quotes and scheduling appointments for its junk removal services." *Id.* ¶ 3. Defendant monitors and records these interactions without

disclosing to consumers that it is doing so. *Id.* Whenever Defendant places a call from its customer service numbers, its customer service agents do not disclose that the call is being recorded, and therefore "customers have a reasonable expectation of privacy regarding any information that they divulge on the call, including personally identifying information, including their name and telephone number, as well as the identity of the objects they seek to dispose, and the address where those items are located (all of which is highly sensitive in nature)." *Id.* ¶ 20. Defendant records the customer service calls between its agents and its customers and potential customers (such as Plaintiffs), "including through the use of software provided by Invoca, Inc." *Id.* ¶ 21; *see also id.* ¶ 22 ("Using the Invoca software (and potentially others), Defendant 'records and monitors customer calls.'").

The Invoca software "comprises a suite of tools that are focused on optimizing marketing campaigns and audience management by allowing companies to monitor and analyze customer-agent phone interactions." *Id.* ¶ 23. Specifically, "Invoca's software uses artificial intelligence technology to record and transcribe customers' phone calls, which it then analyzes to gain insight about the customer's purchasing journey." *Id.* "Invoca records the contents of these calls as they occur in real time." *Id.* As Invoca itself explains: "Unlike other systems that only begin recording once the agent answers, Invoca begins recording as soon as the call connects — and stays on the call no matter where it's transferred to — enabling you to capture the complete caller experience, every time." *Id.* ¶ 23 n.3. "Defendant deliberately implemented the call recording and monitoring features of Invoca's software in an effort to improve its marketing campaigns." *Id.* ¶ 24.

Plaintiff Serna alleges that he contacted Defendant's customer service number to inquire about Defendant's services. *Id.* ¶ 7. In or around June 2022, Plaintiff Serna received a call from one of Defendant's customer service numbers, wherein Plaintiff Serna and one of Defendant's agents "discussed personal and confidential matters." *Id.* Plaintiff Serna took the call in his home. *Id.* "During the calls Defendant placed

to him, Mr. Serna was never told that the calls were being recorded, and he never consented to those recordings." *Id.* "Because Defendant did not disclose that its calls to Mr. Serna were being recorded, Mr. Serna reasonably expected that his communications with Defendant and its agents during the calls were not being recorded, and were therefore 'confidential' as defined by California Penal Code § 632(c)." *Id.* Upon information and belief, Defendant was recording its calls with Plaintiff Serna "and captured the contents of his communications with the live agents using Invoca's software." *Id.* Plaintiffs Murphy, Palmer, and Amponsen make nearly identical allegations to those of Plaintiff Serna. *Id.* ¶ 10 (Plaintiff Murphy disclosed personal and confidential matters on call taken in his home without knowing the call was being recorded by Defendant using the Invoca software); *Id.* ¶ 11 (same for Plaintiff Palmer); *Id.* ¶ 13 (same for Plaintiff Amponsen).

Plaintiff Aaron Rodriguez similarly alleges that during the summer of 2023, he received a call from Defendant's customer service number about Defendant's services, and during the pendency of the call "discussed personal and confidential matters with one of Defendant's agents." *Id.* ¶ 8. Plaintiff Rodriguez took the call while in his personal vehicle. *Id.* "During the call Defendant placed to him, Mr. Rodriguez was never told that the call was being recorded, and he never consented to the recording." *Id.* "Because Defendant did not disclose that its call to Mr. Rodriguez was being recorded, Mr. Rodriguez reasonably expected that his communication with Defendant and its agent during the call was not being recorded and was therefore "confidential" as defined by California Penal Code § 632(c)." *Id.* Upon information and belief, Defendant was recording its calls with Plaintiff Rodriguez and "captured the contents of his communication with the live agent using Invoca's software." *Id.* Plaintiffs Mansoori and Barnes make nearly identical allegations to those of Plaintiff Rodriguez. *Id.* ¶ 9 (Plaintiff Mansoori disclosed personal and confidential matters on call from personal vehicle without knowing the call was being recorded by Defendant using the Invoca software); *Id.* ¶ 12 (same for Plaintiff Barnes).

As a result of Defendant's actions, Plaintiffs bring claims against Defendant for violations of Cal. Penal Code § 632(a) and Cal. Penal Code § 632.7(a), individually and on behalf of classes of individuals who participated in inbound telephone calls from Defendant or one of its agents. *Id.* ¶¶ 28; 37-55.

## III. GOVERNING LAW

There are two California statutes at issue in this case, Cal. Penal Code § 632 and Cal. Penal Code § 632.7. Cal. Penal Code § 632(a) states, in pertinent part:

> (a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation . . .

Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Cal. Penal Code § 632.7(a) states:

> (a) Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) . . .

## IV. ARGUMENT

### A. The FAC Adequately Alleges That Defendant Intended to Record the Calls at Issue Under Both Under §§ 632 And 632.7

Defendant correctly notes that both § 632 And § 632.7 have an intent requirement in that Defendant must have intentionally recorded the calls at issue. *Rojas*, 20 Cal. App. 5th at 432. However, Plaintiffs plausibly plead that Defendant intended to record the calls at issue.

As the allegations in the FAC make clear, Defendant knowingly implemented the Invoca software, which Defendant knew "records and monitors customer calls." FAC ¶ 22. More than that, Defendant's agents knew the Invoca software was recording their calls with Plaintiffs but did not disclose the same to Plaintiffs. *Id.* ¶¶ 7-13, 20. Plaintiffs specifically allege "Defendant deliberately implemented the call recording and monitoring features of Invoca's software in an effort to improve its marketing campaigns." *Id.* ¶ 24. These allegations plausibly establish that Defendant intentionally recorded the calls with Plaintiffs. Further, given the nature of Defendant's business, and the combined facts that Defendant and its agents knew (1) that Defendant was implementing the Invoca software to record customer service calls (including those with Plaintiffs), and (2) that as part of the calls, Plaintiffs and class members divulged "their name and telephone number, as well as the identity of the objects they seek to dispose, and the address where those items are located (all of which is highly sensitive in nature)," *id.* ¶ 20, it is clear that Defendant intended to record confidential communications.

*Rojas* is instructive. There, the plaintiff, an employee of the defendant, brought causes of action under CIPA §§ 632 and 632.7 because the defendant "employed a full-time telephone call recording system" which was "activated when an employee placed a telephone call" and recorded personal calls made by the plaintiff without consent. *Rojas*, 20 Cal. App. 5th at 430. The defendant argued "it did not intend to record any specific call that, in fact, contained Rojas's confidential communications,

and [. . .] that it did not intend to record any specific call between Rojas and her daughter." *Id.* at 433. The court rejected the defendant's argument, finding that "neither position is defensible." *Id.* The court accepted the plaintiff's argument that "because HSBC was using, and knew it was using, a full-time telephone call recording system that recorded *all calls* during the period of time when HSBC recorded the 317 conversations at issue, HSBC *intentionally* recorded the calls that contained Rojas's confidential communications—in violation of both sections 632(a) and 632.7(a)." *Id.* The court concluded the defendant "did not meet its burden of establishing as a matter of law that it did not have 'knowledge to a substantial certainty that [its] use of the equipment w[ould] result in the recordation of a confidential conversation' of an employee and a third party like Rojas." *Id.* at 436 (quoting *People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal. 2d 123, 134 (1969)); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827–28 (N.D. Cal. 2020) ("[T]he Court finds that Defendants' failure to rectify the defect causing 'false accepts' or destroy the recordings produced under such circumstances could plausibly be considered 'intentional' rather than 'a result of accident or mistake.'").

The *Rojas* court's analysis is directly applicable to this matter. Like in *Rojas*, Defendant knew it was using the Invoca software to record all outbound customer service calls, and that the Invoca software "begins recording as soon as the call connects — and stays on the call no matter where it's transferred to — enabling [Defendant] to capture the complete caller experience, every time." *Id.* ¶ 23 n.3. Defendant also knew that its business required its agents to obtain personal and confidential information on these calls, including "name and telephone number, as well as the identity of the objects [customers] seek to dispose, and the address where those items are located." *Id.* ¶ 20. As such, Defendant had "knowledge to a substantial certainty that [its] use of the equipment w[ould] result in the recordation of a confidential conversation." *People*, 70 Cal. 2d at 134. At minimum, a reasonable jury could conclude that Defendant intended to record the phone calls at issue, including

that Defendant intended to record confidential information contained within those phone calls. *Rojas*, 20 Cal. App. 5th at 435 ("Stated differently, on this record, a reasonable trier of fact could find that HSBC had the requisite intent under sections 632(a) and 632.7(a).").[1]

None of Defendant's arguments and authorities warrant deviating from the analysis of *Rojas*. Defendant claims Plaintiffs' allegations are "conclusory." MJP at 3. That is clearly false given that Plaintiffs have alleged in detail, through references to Invoca's website and its own statements regarding its use by Defendant, that the software records all customer service calls, including the ones made to Plaintiffs, and that the software is deliberately used by Defendant to record calls for the purpose of improving marketing campaigns. FAC ¶¶ 3, 20-27.

Defendant's citation to *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) is unavailing. There, the "only specific facts alleged by [the p]laintiff are the dates of the phone calls he allegedly placed to Defendant's customer service line." *Id.* at *2. The plaintiff made only a vague assertion that the defendant "had a policy or practice of recording telephone conversations without providing a single factual allegation supporting that conclusion." *Id.* (internal citation omitted). Here, by contrast, Plaintiffs allege very specific allegations about (1) the software Defendant used (Invoca) and its functionality, (2) how and when Defendant used the software to record the calls, (3) the types of private and confidential information captured by those calls, and (4) specific representations by Invoca regarding its software and its relationship with Defendant. FAC ¶¶ 1, 3, 20-27. These allegations

---

[1] The question of intent is ordinarily a question of fact that cannot be determined at the pleading stage. *People v. Hopkins*, 149 Cal. App. 3d 36, 44 (Ct. App. 1983) (explaining "intent is a question of fact for the jury"); *Hartman v. Bandini Petroleum Co.*, 107 Cal. App. 659, 661 (Cal. Ct. App. 1930) ("Respondent's intent and purpose in seeking an examination of the records was a question of fact to be determined upon the hearing."); *Hudson v. Superior Ct.*, 7 Cal. App. 5th 1165, 1171 (2017) ("[A] person's intent is a question of fact to be determined from all the circumstances of the case, and usually must be proven circumstantially." (internal citations omitted)).

are considerably more detailed and robust than those at issue in *Vartanian*.

Ignoring most of the factual allegations in the FAC, Defendant cherry picks language wherein Plaintiffs allege that one of the functions of the Invoca software is to record "call outcomes" in Defendant's CRM platform (FAC ¶ 25) and argues that this allegation alone "do[es] not demonstrate an intent to use Invoca to record the actual phone calls." MJP at 4. But Defendant's argument ignores the factual allegations that: (1) Defendant records the customer service calls between its agents and its customers and potential customers (such as Plaintiffs) using the Invoca software (*Id*. ¶ 21); (2) "Invoca's software uses artificial intelligence technology to record and transcribe customers' phone calls, which it then analyzes to gain insight about the customer's purchasing journey" (*Id*. ¶ 23); (3) "Invoca records the contents of these calls as they occur in real time" (*id.*); (4) "Invoca begins recording as soon as the call connects — and stays on the call no matter where it's transferred to" (*Id.* ¶ 23 n.3); and (5) "Defendant deliberately implemented the call recording and monitoring features of Invoca's software in an effort to improve its marketing campaigns" (*Id.* ¶ 24). These allegations extend far beyond just recording call outcomes, as Defendant misleadingly suggests.

Defendant tries to fit the square peg of this case into the round hole of *Doe I v. Google LLC,* 2024 WL 3490744 (N.D. Cal. July 22, 2024) ("*Google*"), but this matter is distinguishable. There, the plaintiffs sued the defendant for providing software called a pixel to certain health care providers for use on their websites for purposes of analyzing traffic on the websites. *Id.* at *1. The plaintiffs alleged that use of the pixel resulted in private health information being transmitted to the defendant and that the defendant fed the private health information into its "advertising machinery." *Id.* The court noted that the defendant had "admonished health care providers not to use the source code in a way that causes users' personal health information to be transmitted to" it. *Id.* Given that background, the court concluded the plaintiffs failed to allege the defendant intended to receive the confidential information." *Id.*

There are two main problems with Defendant's attempt to liken this case to *Google*. The first is that the analogy is misplaced factually. Defendant is not similarly situated to Google—Invoca is similarly situated to Google but is not a defendant in this case (both Invoca and Google provided software services to third parties to be used to record user interactions with the third party). Defendant here is akin to the website owner that incorporated the pixel, and the *Google* decision does not analyze liability regarding the website owner. Secondly, here, Defendant did not instruct Invoca not to record confidential information, nor did it put any process in place whereby confidential information would be omitted from recording. As such, this case is wholly distinguishable from *Google*, as there was nothing "inadvertent" about Defendant's conduct.

Of note, another court in the Northern District reached an alternative conclusion to that reached by the court in *Google* on similar facts, further undermining its viability. In *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), *motion to certify appeal denied,* 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024), the court found that "[w]hile plaintiffs acknowledge that Meta may tell third parties and Facebook users that it intends to prevent receipt of sensitive health information, plaintiffs contend that is not what Meta *really* intends. . . What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. . . At this stage, intent has been adequately alleged." So too here, Defendant intended to use the Invoca software to capture all customer service communications, including confidential ones, and took no steps to prevent the recording of confidential information.

Defendant argues "Plaintiffs also do not and cannot state a claim under CIPA § 632 for the additional reason that the FAC does not establish that 1-800-GOT-JUNK *intentionally* recorded a *confidential communication*." MJP at 4. But this argument is

categorically foreclosed by *Rojas*. Because Defendant "was using, and knew it was using, a full-time telephone call recording system that recorded *all calls*[, it] *intentionally* recorded the calls that contained [Plaintiffs'] confidential communications—in violation of both sections 632(a) and 632.7(a)." *Rojas*, 20 Cal. App. 5th at 433.

Defendant attempts to liken this case to *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 715 (2022), *review denied* (Apr. 20, 2022), which was a police disciplinary case which challenged a "digital in-car video system (DICVS) recording that captured petitioners willfully abdicating their duty to assist a commanding officer's response to a robbery in progress . . ." Notably, there, the evidence made clear that "only the officers in the vehicle can activate the DICVS." *Id.* 728. The court rejected the officers' request to bar the evidence from the DICVS under § 632 because "[a]lthough petitioners testified they were unaware the DICVS was running on the day in question, they presented no evidence to establish who activated the system. Without that critical piece of evidence, petitioners plainly could not prove" intent as required by § 632. Here, by contrast, Plaintiffs were never made aware by Defendant that the Invoca software was recording their conversations with Defendant, and Defendant intentionally used the Invoca software to record all customer service calls, which Defendant knew would result in recording confidential information. Therefore, this case is akin to *Rojas*, not *Lozano*.

### B. Plaintiffs Adequately State a Claim Under § 632

#### 1. § 632 Is Not Limited to Landlines

Defendant argues that "Plaintiffs' CIPA § 632 claims fail because they do not plead use of a landline." MJP at 6. However, numerous courts have properly concluded that the term "telephone" in § 632 is not limited to landline telephones. *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1042 (S.D. Cal. 2018) ("Section 632 unambiguously applies to communications carried on by means of a cellular radio telephone."); *Perea v. Humana Pharmacy, Inc.*, 2013 WL 12129618, at

*5 (C.D. Cal. Jan. 23, 2013) (rejecting argument that § 632 is limited to calls over landlines); *Kahn v. Outrigger Enterprises, Inc.*, 2013 WL 12136379, at *5 (C.D. Cal. Oct. 29, 2013) ("The word 'telephone' in section 632 is not modified to limit its meaning to a subset of telephones. It thus incorporates all telephones."); *Nader v. Cap. One Bank (USA), N.A.*, 2013 WL 11070244, at *2 n.4 (C.D. Cal. June 11, 2013) (same); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 771 (2002) (applying § 632 to a claim involving calls made with a cellular phone).

Courts finding that § 632 applies to cellular telephones provide the more compelling analysis. Indeed, the plain language of the statute is clear, namely that it prohibits recording "confidential communication . . . by means of a telegraph, telephone, or other device, except a radio." *Id.* The phrase "except a radio" does not cover cellular telephones because the statute makes clear that it excludes conversations carried out over a radio, and not by means of *telephones* that operate by radio frequencies. *Perea*, 2013 WL 12129618, at *5 ("Assuming, arguendo, that cellular and cordless telephones operate by radio frequencies, the plain language of the statute excludes conversations carried on 'by means of ... a radio' not by means of telephones that operate on radio frequencies."); *Nader*, 2013 WL 11070244, at *2 n.4 ("Capital One's claim that 'radio' includes a cellular phone is meritless."); *Brinkley*, 340 F. Supp. 3d at 1042 ("Having concluded that the words used in § 632 unambiguously prevent the recording of communications carried on by means of a cellular radio telephone, the Court need not examine the legislative history of that statute, apply any other maxims of statutory construction, or consider the consequences of its interpretation."). Further, "the usual and ordinary meaning of the term 'telephone' in section 632 incorporates cellular phones. Because the words themselves are not ambiguous, the plain meaning governs." *Kahn*, 2013 WL 12136379, at *5; *Brinkley*, 340 F. Supp. 3d at 1042 ("This Court agrees with the courts in *Perea*, *Nader*, and *Khan* that a cellular radio telephone is a 'telephone' under the usual and ordinary meaning of that word.").

The court in *Brinkley* explained that the error made by courts reaching the opposite conclusion was incorrectly determining that the statutory language was ambiguous, when it is not, and seeking to divine meaning from the legislative history (which is also, at best, ambiguous). *Brinkley*, 340 F. Supp. 3d at 1041–42.

Other than just citing the cases in support of its position, Defendant makes no attempt to justify why its interpretation of the statute is the correct one. The statute is clear that "telephone" includes a cellular telephone and the "except a radio" limitation, even if it modified the word "telephone," would not exempt calls over a cellular phone from coverage under the statute.

### 2. The FAC Plausibly Alleges That Plaintiffs' Communications with Defendant Were Confidential

Interpreting the language of § 632(c), which defines "confidential communication," the Supreme Court of California concluded "that a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan*, 27 Cal. 4th at 776–77; *see also Frio v. Superior Ct.*, 203 Cal. App. 3d 1480, 1488 (Ct. App. 1988), *modified* (Sept. 22, 1988) ("A communication must be protected if either party reasonably expects the communication to be confined to the parties."). Importantly, "[t]he issue whether there exists a reasonable expectation that no one is secretly recording or listening to a phone conversation is generally a question of fact." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011); *see also Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 169 (2003) ("It is for the jury to decide whether under the circumstance presented [the plaintiff] could have reasonably expected that the communications were private.").

Because California courts have made clear that the question of whether a reasonable expectation of privacy exists is a question of fact, the question is inappropriate for the court to decide on a motion to dismiss absent a clearly deficient pleading. Here, Plaintiffs more than adequately plead a reasonable expectation of

privacy because Defendant did not disclose to Plaintiffs that the customer service calls were being recorded and because the substance of the customer service calls resulted in consumers divulging "personally identifying information, including their name and telephone number, as well as the identity of the objects they seek to dispose, and the address where those items are located (all of which is highly sensitive in nature)." *Id.* ¶ 20. Each Plaintiff alleges that they discussed such "personal and confidential matters" with Defendant in locations in which they would reasonably expect privacy and confidentiality (*i.e.* their homes and personal vehicles). *Id.* ¶ 7 (Plaintiff Serna); *id.* ¶ 8 (Plaintiff Rodriguez); *id.* ¶ 9 (Plaintiff Mansoori); *id.* ¶ 10 (Plaintiff Murphy); *id.* ¶ 11 (Plaintiff Palmer); *id.* ¶ 12 (Plaintiff Barnes); *id.* ¶ 13 (Plaintiff Amponsen). Plaintiffs therefore have established a reasonable expectation of privacy. *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1038 (9th Cir. 2020), *rev'd and remanded on other grounds*, 595 U.S. 344, 142 S. Ct. 1051 (2022) ("It was, of course, clearly established in 2006 and 2007 that individuals have a reasonable expectation of privacy from covert recording of conversations in their homes, cars, and offices, and on their phones.").

The cases cited by Defendant are distinguishable. In *Vartanian*, 2012 WL 12326334, at *3, the court dismissed the claim where the plaintiff failed to allege "a single fact" in support of a reasonable expectation of privacy. *Id.* The court found that the plaintiff asserted a mere subjective expectation of privacy but provided no facts to support "an objectively reasonable expectation that the conversation was not being overheard or recorded." *Id.* Here, by contrast, not only do Plaintiffs allege that they were not advised that the call was being recorded, but they also allege facts regarding the location in which they took the call (their homes or personal vehicles), which are facts that support the conclusion that Plaintiffs were not in a location in which they expected "that the communication may be overheard or recorded." § 632(c). Plaintiffs also allege that Defendant's customer service calls resulted in customers divulging personal information such as their names, telephone numbers,

among others. All these alleged facts clearly distinguish this case from *Vartanian*.

Defendant cites *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467 (2014) for the proposition that "nothing in the language of section 632 or the case law interpreting 'confidential communication' suggests that recording a conversation without advising the other party constitutes a per se violation of the statute." However, Plaintiffs are not arguing that recording a conversation without advising the other party constitutes a *per se* violation of the statute, Plaintiffs are arguing that the totality of the alleged circumstances, including 1) that Defendant permitted a third party, Invoca, to eavesdrop on its customer service calls with Plaintiffs and class members without notifying Plaintiffs that the calls were being recorded; 2) that Plaintiffs took the calls from locations in which their expectation of privacy was objectively reasonable, namely in their homes and personal vehicles; and 3) that customers divulged personal information on customer service calls such as their names, telephone numbers, items to be disposed of and the location of those items, taken together, establish a reasonable expectation of privacy.

The Ninth Circuit's decision in *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) also does not support Defendant's argument. There, the plaintiff alleged that "he called ADT to 'dispute a charge' . . . [and] that his conversation was confidential because it was 'carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined thereto.'" *Id.* at 1020. The Ninth Circuit found these barebones allegations were insufficient to cross the line from possibility to plausibility. *Id.* Here, as set forth above, Plaintiffs allege considerably more facts, namely, that they were never told that the calls were being recorded and eavesdropped on by a third party, Invoca, that they took the calls from their homes and personal vehicles (places in which they reasonably expected them to be private), and that Defendant's customer service calls involved customers divulging specific pieces of personally identifiable information. The allegations in Plaintiffs' First Amended Complaint here are considerably more

developed than those present in *Faulkner*, which renders it inapposite.

## V. CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's Motion for Judgment on the Pleadings.

Dated: October 24, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *__/s/ L. Timothy Fisher______*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,261 words, which complies with the word limit of L.R. 11-6.2.

*/s/ L. Timothy Fisher*
L. Timothy Fisher