**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
Lori Chang (SBN 228142)
*ChangL@gtlaw.com*
Adam M. Korn (SBN 333270)
*Adam.Korn@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

*Attorneys for Defendant*
*1-800-GOT-JUNK? LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| JUSTIN SERNA et al.,<br>*Plaintiffs*,<br>v.<br>1-800-GOT-JUNK? LLC,<br>*Defendant*. | CASE NO. 5:24-cv-00047-HDV-MRW<br>Hon. Hernán D. Vera<br>**1-800-GOT-JUNK? LLC'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br>Date: November 21, 2024<br>Time: 10:00 A.M.<br>Complaint Filed: 1/9/2024 |

## Table of Contents


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiffs Fail to State a Claim Under CIPA Section 632 ........ 2

1. The Plain Language Of Section 632 Excludes Confidential Communications Transmitted By Cell Phones ........ 2

2. The FAC Does Not Plausibly Allege Plaintiffs' Communications With GOT-JUNK Were Confidential ........ 5

3. The FAC Fails To Plausibly Allege GOT-JUNK's Intent To Record Confidential Communications ........ 8

B. Plaintiffs Also Fail To Allege GOT-JUNK's Intent Under CIPA § 632.7 ........ 10

III. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 11

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644, 654 (2020) ........ 3

*Brinkley v. Monterey Fin. Servs., LLC*,
340 F. Supp. 3d 1036, 1041-42 (S.D. Cal. 2018) ........ 3, 4

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 9

*Ewing v. Empire Cap. Funding Grp., Inc.*,
No. 17-cv-2507, 2019 WL 157660 (S.D. Cal. Jan. 10, 2019) ........ 5

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) ........ 6, 7

*Faulkner v. ADT Sec. Servs., Inc.*,
No. C 11-00968, 2011 WL 1812744 (N.D. Cal. May 12, 2011), *aff'd*, 706 F.3d 1017 (9th Cir. 2013) ........ 8

*Fazaga v. Fed. Bureau of Investigation*,
965 F.3d 1015 (9th Cir. 2020) ........ 7

*Galaxia Elecs. Co. v. Luxmax, U.S.A.*,
No. 16-cv-05144, 2023 WL 2347085 (C.D. Cal. Feb. 1, 2023) ........ 7

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........ 11

*Kahn v. Outrigger Enterprises, Inc.*,
No. 2:13-cv-03802-SVW-JCx, 2013 WL 12136379 (C.D. Cal. Oct. 29, 2013) ........ 4

*McEwan v. OSP Group, L.P.*,
No. 14-cv-2823-BEN (WVG), 2015 WL 13374016, at *4 (S.D. Cal. June 30, 2015) ........ 3, 5

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019) ........ 3

*Pepper v. Charitable Res. Found., Inc.*,
No. 14-cv-02573, 2014 WL 12961327, at *3 (C.D. Cal. Oct. 14, 2014) ........ 4

*Perea v. Humana Pharmacy, Inc.*,
No. SACV 12-1881-JST, 2013 WL 12129618 (C.D. Cal. Jan. 23, 2013) ................. 4, 7

*Sajfr v. BBG Commc'ns, Inc.*,
No. 10-CV-2341, 2012 WL 398991 (S.D. Cal. Jan. 10, 2012) ..................................... 8

*Vartanian v. VW Credit, Inc.*,
No. 11-cv-10776, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012)........................... 6, 11

*Young v. Hilton Worldwide, Inc.*,
565 F. App'x 595 (9th Cir. 2014)............................................................................ 5

**State Cases**

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........................................................................................ 4, 5

*Frio v. Superior Ct.*,
203 Cal. App. 3d 1480 (1988) ................................................................................. 7

*Hartman v. Bandini Petroleum Co.*,
107 Cal. App. 659 (1930) ........................................................................................ 9

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
168 223 Cal. App. 4th 1454 (2014) ......................................................................... 4

*Hudson v. Superior Ct.*,
7 Cal. App. 5th 1165 (2017) ................................................................................... 9

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .............................................................................................. 5

*Estate of Kramme*,
20 Cal.3d 567 (1978) ............................................................................................... 8

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ............................................................................... 9, 10

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972) ..................................................................................... 9

*People v. Hopkins*,
149 Cal. App. 3d 36 (1983) ..................................................................................... 9

*People v. Super. Ct. of Los Angeles Cty*. (*Smith*),
70 Cal. 2d 123 (1969) ........................................................................................... 8, 9

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ............................................................................... 9, 10

**State Statutes**

Cal. Pen. Code § 632 .......... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10
Cal. Pen. Code § 632.7 .......... 1, 2, 3, 10, 11
Cal. Pen. Code § 632.7(a) .......... 10

**Other Authorities**

*The Cell Phone Technology* (last visited Nov. 5, 2024), https://www.mat.ucsb.edu/g.legrady/academic/courses/03w200a/projects/wireless/cell_technology.htm .......... 2
*Mobile Phone* (last visited Nov. 5, 2024), https://en.wikipedia.org/wiki/Mobile_phone .......... 2

## I. INTRODUCTION

Plaintiffs' Opposition ("Opposition") to 1-800-GOT-JUNK? LLC's ("GOT-JUNK") Motion for Judgment on the Pleadings ("Motion") confirms that GOT-JUNK is entitled to judgment on the pleadings. The fatal deficiencies with Plaintiffs' claims under Sections 632 and 632.7 of the California Invasion of Privacy Act ("CIPA") cannot be cured by amendment.

Plaintiffs' Section 632 claim against GOT-JUNK fails for three independent reasons:

*First*, the Opposition confirms Plaintiffs allege that they made and/or received the alleged calls on their cellular phones, not landlines. But, based on CIPA's statutory scheme and the plain language of § 632, calls to cell phones do not give rise to a claim under § 632. The Section 632 claim fails for this reason alone.

*Second*, the FAC does not allege any non-conclusory facts from which the Court can infer that Plaintiffs had an objectively reasonable expectation of privacy in their phone calls with GOT-JUNK. Plaintiffs' boilerplate allegations regarding calls for junk removal services are not presumptively confidential, and Plaintiffs fail to suggest circumstances that would create a reasonable expectation that the alleged conversations would not be recorded. *See* First Amended Complaint (ECF No. 17) ("FAC") ¶¶ 7-13. Thus, Plaintiffs have failed to allege that the purported calls were "confidential" within the meaning of the statute.

*Third*, Plaintiffs have not even attempted to allege GOT-JUNK's intent to record confidential communications. Plaintiffs erroneously conflate the intent to record all communications with the intent to record confidential conversations specifically. Because Plaintiffs fail to allege GOT-JUNK desired to record confidential communications or that it knew to a substantial certainty that it was recording confidential conversations, their Section 632 claim fails.

Like the deficiencies of Plaintiffs' Section 632 claim, Plaintiffs fail to allege GOT-JUNK's requisite intent under Section 632.7. Plaintiffs' allegations regarding the intent of GOT-JUNK in the FAC are conclusory, at best, and such conclusory allegations are insufficient to allege violations of CIPA under Section 632.7. Thus, judgment should also

be entered in favor of GOT-JUNK on the Section 632.7 claim.

Plaintiffs' fail to provide nonconclusory factual allegations attributable to any of the alleged phone calls, except for the single call from Plaintiff Justin Serna. Instead of offering individualized details and facts, the FAC repeats boilerplate language and conclusions for each of the other Plaintiffs. Plaintiffs' inability to allege concrete facts regarding the alleged calls highlights that Plaintiffs' claims are meritless.

GOT-JUNK is entitled to judgment on the pleadings.

## II. ARGUMENT

### A. Plaintiffs Fail to State a Claim Under CIPA Section 632

Plaintiffs' Opposition confirms that their CIPA Section 632 claim fails because 1) Section 632 does not apply to cell phones; 2) Plaintiffs fail to adequately allege their communications with GOT-JUNK were confidential; and 3) Plaintiffs fail to allege GOT-JUNK intended to record any confidential communications.

#### 1. The Plain Language Of Section 632 Excludes Confidential Communications Transmitted By Cell Phones

Plaintiffs do not refute that they made or received the alleged phone calls on their cellular phones. Instead, Plaintiffs argue that CIPA § 632 applies to cellular phones as well as landlines on the basis of a few district court opinions that adopt an interpretation that is contrary to the plain meaning of Section 632, as evidenced by the text and overall statutory structure of CIPA. Section 632 (enacted in 1967, decades before consumer cell phones existed), applies to the intentional recording of a "confidential communication" that is "carried on . . . by means of a telegraph, telephone, or other device, *except a radio* . . . " (italics added). Cell phones are devices that transmit communications via radio frequency,[1]

[1] *See Mobile Phone*, WIKIPEDIA.COM (last visited Nov. 5, 2024), https://en.wikipedia.org/wiki/Mobile_phone ("A mobile phone or cell phone[a] is a portable telephone that can make and receive calls over a radio frequency link while the user is moving within a telephone service area . . . ."); *The Cell Phone Technology*, MAT.UCSB.EDU (last visited Nov. 5, 2024), https://www.mat.ucsb.edu/g.legrady/academic/courses/03w200a/projects/wireless/cell_tec

and are thus expressly excluded by § 632. By contrast, § 632.7 prohibits the intentional recording of "a communication" transmitted using a "cellular radio telephone" or a "cordless telephone" (or between a cellular radio telephone or a cordless telephone and a landline), making clear that cell phone communications are separately regulated under a different provision of CIPA. *See McEwan v. OSP Group, L.P.*, No. 14-cv-2823-BEN (WVG), 2015 WL 13374016, at *4 (S.D. Cal. June 30, 2015) (applying "rules of statutory construction" to conclude that "telephone" in § 632 refers only to landlines, as confirmed by the Legislature's failure to amend § 632 when it enacted § 632.7, and citing *Estate of Reeves*, 233 Cal. App. 3d 651, 677 (1991) ("Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.")). Plaintiffs' cited case law even acknowledges that legislative history confirms § 632 does not cover cell phones. *See Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1041-42 (S.D. Cal. 2018) (recognizing *McEwan* court found "[t]he legislative history suggests that use of 'telephone' refers to landline phones only, not any type of mobile phone" and citing *McEwan*, 2015 WL 13374016, at *3).

Plaintiffs' definition of "telephone" in § 632 relies on a modern-day usage of the term to argue that it incorporates cell phones. But this argument runs counter to a basic tenet of statutory construction that terms are construed based on their "ordinary meaning" at the time that the statute was enacted, not based on new technologies that did not exist at the time. *See, e.g.*, *Bostock v. Clayton Cnty., Georgia,* 590 U.S. 644, 654 (2020) (holding "we orient ourselves to the time of the statute's adoption, here 1964" because "[t]his Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment"); *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). Nor do Plaintiffs (nor the cases they rely on) adequately explain why the term "radio" should

---

hnology.htm ("In essence, a cell phone is a radio. One of the most interesting things about a cell phone is that it is actually a radio -- an extremely sophisticated radio, but a radio nonetheless.").

arbitrarily be read to exclude telephones that "operate by radio frequencies" (i.e. cell phones) but not other devices that similarly transmit communications via radio frequencies, such as "traditional police dispatch systems." *See Brinkley*, 340 F. Supp. 3d at 1041 (citing *Kahn v. Outrigger Enterprises, Inc.*, No. 2:13-cv-03802-SVW-JCx, 2013 WL 12136379 (C.D. Cal. Oct. 29, 2013)).

Further, Plaintiffs' reliance on *Flanagan v. Flanagan*, 27 Cal. 4th 766, 771 (2002), does not compel reading Section 632 to apply to cell phone calls, where the *Flanagan* court did not address this disputed issue but specifically stated that defendant "does not claim section 632 is inapplicable to the calls [the plaintiff] placed from a cellular telephone to a landline telephone." *Flanagan*, 27 Cal. 4th 766 at 771 n.2. As such, the mere observation made in *Perea v. Humana Pharmacy, Inc.*, No. SACV 12-1881-JST (ANx), 2013 WL 12129618, at *5 (C.D. Cal. Jan. 23, 2013), that the *Flanagan* court "never once stated that section 632 did not apply to such claims," does not support holding that Section 632 applies to cell phone calls on the basis of *Flanagan*, which expressly did not address this issue.

Nevertheless, *Flanagan* makes clear that the California Legislature treated cell phone calls differently from landline calls, and enacted different provisions under CIPA to address the privacy concerns that were distinct to the use of cellular and cordless telephones. 27 Cal. 4th at 775-76. This view was reinforced by the California Court of Appeals in *Hataishi v. First Am. Home Buyers Prot. Corp.*, 168 223 Cal. App. 4th 1454 (2014), which denied class certification because "an individualized inquiry was necessary to determine whether a landline, cellular, or cordless telephone had been used in each call," because the "complaint pled only a cause of action for violation of section 632, ***which does not apply to cellular or cordless telephones***." *Id.* at 1469 (emphasis added)

Subsequent courts have recognized that "the California Court's careful distinction between cellular and landline telephone calls suggests that ***it would hold that § 632 is limited to calls involving only landline telephones***" based on *Flanagan* and the "recent California Court of Appeal's decision in *Hataishi v. First Am. Home Buyers Prot. Corp.*, 168 Cal. Rptr. 3d 262 (Cal. Ct. App. 2014), [which] reinforces this view." *Pepper v.*

*Charitable Res. Found., Inc.*, No. 14-cv-02573, 2014 WL 12961327, at *3 (C.D. Cal. Oct. 14, 2014) ("*Flanagan* and *Hataishi* suggest that ***the California Supreme Court would hold that § 632 does not apply to calls involving one or more cellular telephones"*** and thus, "[b]ecause Pepper alleges that he received CRF's calls on his cellular phone, his § 632 claim fails as a matter of law") (emphasis added); *see also Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 596 (9th Cir. 2014) (recognizing Section 632 "generally prohibits eavesdropping and recordation on telephone land lines, whereas [Section 632.7] generally proscribes eavesdropping and recordation on cellular and cordless telephone lines."); *Ewing v. Empire Cap. Funding Grp., Inc.*, No. 17-cv-2507, 2019 WL 157660, at *2 (S.D. Cal. Jan. 10, 2019) ("In examining the legislative history of this section, other cases from this District have held that the definition of 'telephone' means a landline telephone. . . . This Court agrees."); *McEwan*, 2015 WL 13374016, at *3 (dismissing Section 632 claim based on call made with cordless telephone, and finding the "Legislative Counsel of California expressly noted that 'Section 632 . . . does not provide a right of privacy to communications carried over radio telephones.'").

Accordingly, based on CIPA's statutory scheme and the plain language of § 632, alleged calls to cell phones do not give rise to a claim under § 632, and judgment in favor of GOT-JUNK is warranted on this basis alone.

**2. The FAC Does Not Plausibly Allege Plaintiffs' Communications With GOT-JUNK Were Confidential**

To the extent Plaintiffs allege calls made to a landline, any remaining § 632 claims fail because Plaintiffs do not and cannot plead facts demonstrating that their alleged communications with GOT-JUNK were confidential. Under Section 632, a communication is only "confidential" if a party to the conversation has an "objectively reasonable expectation that the conversation is not being overheard or recorded." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006) (quoting *Flanagan*, 27 Cal. 4th at 776-77). The Opposition points to no facts "indicating that [plaintiffs] had an 'objectively reasonable expectation that the conversation [was] not being overheard or recorded.'"

*Vartanian v. VW Credit, Inc.*, No. 11-cv-10776, 2012 WL 12326334, at *3 (C.D. Cal. Feb. 22, 2012) (dismissing Section 632 claim and rejecting plaintiff's argument that "because Defendant did not disclose or otherwise provide notice that the telephone conversations would be recorded, the Court should infer that Plaintiff had an objectively reasonable expectation that the conversation was not being overheard or recorded.").

Plaintiffs aver that their own allegations "are considerably more detailed and robust than those at issue in *Vartanian*," (Opp. at 12-13), yet cite to no specific facts and only conclusory allegations that they "discussed personal and confidential matters" on the alleged calls. Opp. at 3-4. Like in *Vartanian*, Plaintiffs' conclusions are "unsupported by any other factual allegations" and thus, the FAC "does not set forth an objectively reasonable expectation that the conversation was not being overheard or recorded." *Id.* at *3

As discussed in GOT-JUNK's moving papers, courts "look[] to the circumstances surrounding the call to divine whether the [confidentiality] standard has been met, including the 'nature of [the defendant's] business and the character of the communications.'" Mot. at 14. (citing *Faulkner v. ADT Sec. Servs., Inc.,* 706 F.3d 1017, 1020 (9th Cir. 2013)). Plaintiffs attempt to sidestep the Ninth Circuit's decision in *Faulkner* by asserting "Plaintiffs allege considerably more facts, namely, that . . . they took the calls from their homes and personal vehicles . . . and that Defendant's customer service calls involved customers divulging specific pieces of personally identifiable information." Opp. at 19. But the FAC here does not even allege that Plaintiffs were alone when they spoke with GOT-JUNK. FAC ¶¶ 7-13. Just as calls with the home security company ADT—arguably far more sensitive in nature than calls for junk removal—were not deemed presumptively confidential in *Faulkner*, here, Plaintiffs' calls regarding GOT-JUNK's waste removal services and boilerplate allegations regarding "the identity of the objects they seek to dispose" and "where those items are located" are not presumptively confidential. *Faulkner,* 706 F.3d at 1020. Plaintiffs' conclusory allegations do not support the

inference that their communications were confidential. *Faulkner,* 706 F.3d at 1020.

Plaintiffs' own case law does not support a different result. Plaintiffs cite *Frio v. Superior Ct.*, 203 Cal. App. 3d 1480, 1488 (1988) for the general proposition that "[a] communication must be protected if either party reasonably expects the communication to be confined to the parties." Opp. at 17. However, in *Frio*, the nature of the defendant's business, character of the communications, and detailed allegations demonstrated a reasonable expectation of confidentiality. 203 Cal. App. 3d at 1488-90. There, the court concluded there was "a reasonable expectation by one of the parties that no one [was] . . . overhearing the conversation" where plaintiff alleged "one-on-one" calls between a record producer and his clients "related to a profitable venture" including market data and business strategy discussions. *Id.* at 1490. Similarly, Plaintiffs rely on *Perea,* where plaintiff pled an objectively reasonable expectation that his conversation with a healthcare provider was confidential, "[c]onsidering (1) Defendant's line of business and the sensitive medical information that is likely to be discussed between Defendant's representatives and its customers, and (2) Plaintiff's further allegations that Defendant 'respects the privacy of its customers.'" 2013 WL 12129618, at *6. No such facts regarding sensitive business strategies or medical information are alleged here. Plaintiffs' cherry-picked quote from *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1038 (9th Cir. 2020) fares no better. Opp. at 18. *Fazaga* involved Fourth Amendment and Foreign Intelligence Surveillance Act claims against FBI Agents who allegedly planted physical recording devices in the plaintiff's home. *Fazaga*, 965 F.3d at 1053.

It is telling that Plaintiffs ignores *Galaxia* and other rulings in this district that have dismissed Section 632 claims where, as here, plaintiffs offer only conclusory and self-serving characterizations to suggest the alleged calls were confidential communications under Section 632. *See Galaxia Elecs. Co. v. Luxmax, U.S.A.*, No. 16-cv-05144, 2023 WL 2347085, at *33 (C.D. Cal. Feb. 1, 2023) ("Because [Plaintiff's] allegations that the recorded conversation was 'confidential' and 'regarding the parties' business' are conclusory, they do not adequately state a claim under Cal. Pen. Code § 632."). Here,

Plaintiffs have "not alleged what circumstances would support an expectation of privacy in [its call with GOT-JUNK]." *Faulkner v. ADT Sec. Servs., Inc.*, No. C 11-00968, 2011 WL 1812744, at *4 (N.D. Cal. May 12, 2011), *aff'd*, 706 F.3d 1017 (9th Cir. 2013). As in *Faulkner*, the calls with GOT-JUNK "did not concern 'personal financial affairs' as in *Kearney*, private family matters as in *Flanagan*, or other circumstances that would create a reasonable expectation that the conversation would not be recorded." *Id*.

The FAC fails to allege a confidential communication under section 632. Plaintiffs' claim under Section 632 must be dismissed. *See Sajfr v. BBG Commc'ns, Inc.,* No. 10-CV-2341, 2012 WL 398991, at *6 (S.D. Cal. Jan. 10, 2012) ("Plaintiffs had no reasonable expectation of privacy when they called to discuss their bills . . . consumer calls to a customer care center to discuss a billing issue do not support an expectation of privacy sufficient to qualify such calls as a 'confidential communication' under section 632").

**3. The FAC Fails To Plausibly Allege GOT-JUNK's Intent To Record Confidential Communications**

Even if Plaintiffs could plausibly allege that a confidential communication was recorded (which they haven't), they improperly equate the intent to record *all* communications with the intent to record a *confidential* conversation. Opp. at 11. California courts "reject [the] contention that the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication is sufficient to constitute an offense under the section . . . . [A] necessary element of the offense . . . is [a]n intent to record a confidential communication." *People v. Super. Ct. of Los Angeles Cty*. (*Smith*), 70 Cal. 2d 123, 133 (1969) (holding intent to start recording equipment, without more, does not satisfy intent requirement under § 632); *Estate of Kramme*, 20 Cal.3d 567, 573 n.5 (1978) ("[T]he [*Smith*] court concluded that the Penal Code section [653j, the predecessor to section 632] required an intent to record a confidential communication, rather than simply an intent to turn on a recording apparatus which happened to record a confidential

communication."). Thus, under Section 632, "the recording of a confidential conversation is intentional if the person using the recording equipment does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation." *Lozano v. City of Los Angeles,* 73 Cal. App. 5th 711, 727 (2022) (quoting *Smith*, 70 Cal. 2d 123 at 134) (affirming trial court's rejection of Section 632 argument "[b]ecause there was no evidence that a person intentionally recorded a confidential communication in violation of the statute"); *see also People v. Buchanan*, 26 Cal. App. 3d 274, 289 (1972) (holding no intent where defendant "inadvertently overheard" the conversation rather than intentionally). Here, Plaintiffs allege at most an intent to record all telephone calls, which under California law is insufficient to state a claim under Section 632.

The cases Plaintiffs cite to argue otherwise are inapposite. *See* Opp. at 14.[2] Plaintiffs rely on *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), where the plaintiffs alleged that their healthcare providers installed a Meta Pixel on their patient portals, which allowed Meta to receive (and eventually monetize) plaintiffs' sensitive medical information once they logged into their patient portals. *Meta*, 690 F. Supp. 3d 1064, at 1074. The court denied Meta's motion to dismiss the plaintiffs' Section 632 claim based on allegations that sensitive healthcare information was intentionally captured and transmitted to Meta. *Id.* at 1079. Here, however, Plaintiffs do not allege GOT-JUNK's receipt and eventual monetization of sensitive medical information.

Plaintiffs' reliance on *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427 (2018) is equally inapposite. Opp. at 10-12, 15. *Rojas* concerned an HSBC employee who made 316 calls to her mother on an HSBC company telephone equipped with a recording device that was activated every time an employee placed a phone call. *Id.* at 430. Based on these

---

[2] The other cases in this section that Plaintiffs tuck away in a footnote do not involve CIPA or call-recording and fail to bolster Plaintiffs' position. (Opp. at 12 n. 1) (citing *People v. Hopkins*, 149 Cal. App. 3d 36, 44 (1983); *Hartman v. Bandini Petroleum Co.*, 107 Cal. App. 659, 661 (1930) *Hudson v. Superior Ct.*, 7 Cal. App. 5th 1165, 1171 (2017)).

facts, the employee's mother sued HSBC for alleged violations of Section 632. *Id.* Crucially, in *Rojas*, HSBC openly conceded that none of the recorded calls at issue involved HSBC business but were instead private personal telephone conversations between an HSBC employee and her family member. *Id.* Therefore, "the conversations were deemed to be confidential, and the only issue on appeal was whether [HSBC] 'intentionally' recorded them." *Id.* at 434. Unlike in *Rojas*, where the defendant was a bank (HSBC) that acknowledged it recorded an employee's "private personal telephone conversations," here, GOT-JUNK is a waste-removal company, the alleged calls were between potential customers and GOT-JUNK's agents, and Plaintiffs fail to plead facts for the Court to infer that the communications were confidential. *Id.* at 430; FAC ¶¶ 7-13.

Because Plaintiffs fail to plead GOT-JUNK "desire[d]" to record a confidential conversation or knew to a "substantial certainty" that recording GOT-JUNK calls regarding its waste-removal services would result in the recordation of a confidential conversation, Plaintiffs do not adequately allege that GOT-JUNK intentionally recorded confidential conversations. *See Lozano,* 73 Cal. App. 5th at 728. Plaintiffs' claim under Section 632 fails as a matter of law on this additional, separate ground.

**B. Plaintiffs Also Fail To Allege GOT-JUNK's Intent Under CIPA § 632.7**

Judgment should be granted on Count II because Plaintiffs fail to allege facts establishing GOT-JUNK's requisite intent under CIPA § 632.7. Cal. Penal Code § 632.7. Like Section 632, CIPA Section 632.7 only applies to "intentional" wiretapping or recording of certain types of communications. *See* Cal. Penal Code § 632.7 (defendant must "intentionally" record a communication between certain types of telephones and/or telephone lines). Whereas Section 632 specifically requires an intent to record a *confidential* communication, including confidential communications that occur by telephone (*id.* § 632(a)), Section 632.7 requires an intent to record a communication transmitted between two phones lines. Cal. Penal Code § 632.7(a).

Plaintiffs do not allege that GOT-JUNK acted with the requisite intent required under § 632.7. Simply alleging a call recording is not enough to establish a specific intent to record

a proscribed call. Plaintiffs also cannot rely on their conclusory allegations of intent to support their claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth.").

Plaintiffs conveniently gloss over the fact that the sole premise for Plaintiffs' conclusory assertions of intent is a sole paragraph from an alleged Invoca advertising brochure that states Invoca's software enables GOT-JUNK to "record[] the call outcome." FAC ¶ 25. Plaintiffs purport to point to other allegations but fail to address GOT-JUNK's contention that this alleged Invoca brochure forms the sole basis for Plaintiffs' conclusion that "Defendant deliberately monitors and records customer phone calls and shares them with third parties for marketing purpose." Opp. at 13; Motion at 7 (citing FAC ¶¶ 24-25). Plaintiffs effectively concede they have no other support for their intent allegations. Plaintiffs' conclusory assumptions are further undermined by the marketing brochure they cite, which refers to the use of Invoca to record "call outcomes" and not the alleged calls themselves. *See id.* ¶¶ 25-26.

Here, Plaintiffs' allegations of GOT-JUNK's intent are conclusory at best, and the Court need not accept as true such "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Plaintiffs' allegations that GOT-JUNK "intentionally monitored and recorded telephonic communications" fail to plausibly allege violations of CIPA under section 632.7. *Vartanian*, 2012 WL 12326334, at *2 (rejecting plaintiff's "conclusory assertions" of intent).

## III. CONCLUSION

For the above reasons, GOT-JUNK respectfully requests that the Court grant its Motion for Judgment on the Pleadings on Counts I and II of Plaintiffs' First Amended Complaint.

DATED: November 7, 2024

Respectfully submitted,

GREENBERG TRAURIG, LLP

By *<u>/s/ Rebekah S. Guyon</u>*
Rebekah S. Guyon
Lori Chang
Adam M. Korn

*Attorneys for Defendant*
*1-800-GOT-JUNK? LLC*